CONNOR *v.* RAINWATER *et al.*

No. 15475. JUNE 7, 1946.

*W. D. Lanier,* for plaintiff.   *Bussey, Fulcher & Hardin,* for defendants.

CANDLER, Justice. (After stating the foregoing facts.) ■
While the judge, on a hearing of the writ of habeas corpus for a
child's custody, is vested with discretion in determining to whom
custody should be given, such discretion should be governed by
rules of law and exercised in favor of the party having the legal
right, unless the evidence shows that the child's interest and welfare justify the award of the custody to another, where rivalry between parents as to their child's custody is not involved.   Code, §§
50-121, 74-107; *Butts* v. *Griffith,* 189 *Ga.* 296 (5 S. E. 2d, 907),
and cases cited.

In the present case, the contest for the custody of the child was
between two of her maternal aunts.   One of them, Mrs. Connor,
first had the child under a written contract with the child's mother.
The other, Mrs. Rainwater, had possession of the child at the time
of the habeas corpus action.   There was evidence of the fitness of
both aunts to rear the child, and no suggestion was made of either's
disqualification on that ground.   One of the disputed issues was
whether or not it had been agreed between Mrs. Connor and Mrs.
Rainwater for the latter's possession of the child to be temporary
pending the grandmother's illness, or permanent for the child's
custody without condition as to her return.   On that issue the evidence was conflicting.   However, ample evidence was presented to
sustain a finding in favor of the respondent and her husband, if the
contract between the petitioner and the child's mother did not
confer on the petitioner such superior right under the law as would
demand a finding and award in her favor.

The exception and brief of the plaintiff in error assert that the
undisputed evidence established that Barbara Ann Smith was an
illegitimate child.   We cannot agree with that assertion.   The
mother of the child testified that she married a Mr. Adams.   After
the child was born, she found out that Mr. Adams already had a
wife and some children.   She then separated from him.   Although
there was other testimony to the effect that the child's mother came
to the home of Mrs. Connor prior to the child's birth, such testimony does not negative the mother's testimony of the marriage.

There is nothing in the record to suggest that the marriage was ever annulled or that there was a conviction for bigamy. To constitute a valid marriage in this State, there must be parties able to contract. Code, § 53-101. A party to a previous marriage undissolved is unable to contract marriage. Section 53-102. A marriage by such a person is void; but the issue of such marriage, before it is annulled and declared void by a competent court, are legitimate. Section 53-104; *Perkins* v. *Levy,* 158 *Ga.* 896 (124 S. E. 799). Although a party to a bigamous marriage is convicted of the offense of bigamy, "the issue of such second marriage born before the commencement of any prosecution for polygamy . . shall, notwithstanding the invalidity of such marriage, be considered as legitimate." Code, § 26-5603; *Perkins* v. *Levy,* supra. In *Eubanks* v. *Banks,* 34 *Ga.* 407, this court held that at common law the issue of a bigamous marriage were legitimate and capable of inheriting from their half brother, the son of their father by a prior marriage. *Perkins* v. *Levy,* supra. It not being shown in the instant case that the child was illegitimate, the mother did not prima facie have the rights conferred by the Code, § 74-203, which declares: "The mother of an illegitimate child shall be entitled to the possession of the child, unless the father shall legitimate him. . . Being the only recognized parent she may exercise all the paternal power." Therefore a contract which the mother alone entered into with her aunt, Mrs. Connor, consenting for the custody and adoption of the child does not constitute a superior right which would prevent the trial judge in an action for habeas corpus from awarding the child to another aunt, Mrs. Rainwater, and her husband, when there was ample evidence to authorize a finding that the latter had received the child under a verbal agreement whereby Mrs. Connor had consented for Mrs. Rainwater to have permanent custody of the child. In view of the imperfectly established right of the mother to contract with a third person for custody and adoption of the child, it is not necessary in this case to pass on the question of whether or not a third person, having a valid contract with the parent or parents exercising all of the parental power under the law, can, in the absence of proof of her unfitness to rear the child, be denied an award of custody of the child on a habeas corpus action.

■ The second assignment of error complains of the admission of certain testimony of the child's mother. This exception shows

that the ruling of the court was as follows, "I will let that stay in for the present." It is shown neither in the assignment of error nor elsewhere in the record that the plaintiff in error subsequently during the trial called the court's attention to the matter or obtained a definite and final ruling upon the admissibility of the evidence. Under the circumstances, we do not think that any question on this alleged assignment of error is presented to the court for determination. *Mickle* v. *Moore,* 193 *Ga.* 150 (17 S. E. 2d, 728); *Clark* v. *Western & Atlantic Railroad,* 41 *Ga. App.* 317 (152 S. E. 847); *Bowers* v. *Southern Ry. Co.,* 10 *Ga. App.* 367 (73 S. E. 677); *Webb* v. *Biggers,* 71 *Ga. App.* 90 (30 S. E. 2d, 59). In *Clark* v. *Western & Atlantic Railroad,* supra, in holding that the assignment of error (complaining of the rejection of certain testimony) did not raise any question for the consideration of the court, the objection there involved was as follows, "I believe I will leave it out *for the present.*" In connection with its ruling, the court said: "Counsel for the plaintiff in error subsequently during the trial should have called the court's attention to the matter and obtained a definite and final ruling upon the admissibility of the evidence, and not have left it 'like Mahomet's coffin, hanging betwixt heaven and earth.'"

*Judgment affirmed. All the Justices concur. Bell, C. J., Jenkins, P. J., Atkinson and Head, JJ., concur specially.*

BELL, Chief Justice, concurring specially. The opinion correctly states: "There was evidence of the fitness of both aunts to rear the child, and no suggestion was made of either's disqualification on that ground. One of the disputed issues was whether or not it had been agreed between Mrs. Connor and Mrs. Rainwater for the latter's possession of the child to be temporary pending the grandmother's illness, or permanent for the child's custody without condition as to her return. On that issue the evidence was conflicting." Nor was there any evidence as to the unfitness of Mr. Rainwater. Accordingly, the judgment awarding custody of the child to Mr. and Mrs. Rainwater was fully authorized as against Mrs. Connor, the only party complaining, regardless of whether her right to transfer custody to another was defective or not, and irrespective of any question as to the rights or relative rights of the mother and father, who are not parties to the case.

JENKINS, P. J., and ATKINSON and HEAD, JJ. concurring spe-

cially. We concur in the judgment, but not in that part of the first division of the opinion which states that the father has parental control over the child in question.